Alan J. Reinach, State Bar No. 196899
Jonathon S. Cherne, State Bar No. 281548
Church State Council
2686 Townsgate Road
Westlake Village, CA 91361
Phone: (805) 413-7398; Fax: 805-778-8843
Email: ajreinach@churchstate.org

James A. Sonne, State Bar No. 250759
Stanford Law School Religious Liberty Clinic
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305
Phone: (650) 723-1422; Fax: (650) 723-4426
Email: jsonne@law.stanford.edu

Counsel for Plaintiff Thomas Schemkes

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **Thomas Schemkes**, <br><br> Plaintiff, <br><br> v. <br><br> **Menlo Park City School District,** <br><br> Defendant. | Case No. ____3:25-cv-8055____ <br><br> **Complaint** <br><br> 1. Religious Discrimination in Employment in violation of Title VII of the Civil Rights Act of 1964 <br><br> DEMAND FOR JURY TRIAL |

**Background**

1.    This complaint concerns a public-school district's unjust treatment and termination of a teacher in violation of Title VII of the Civil Rights Act of 1964.

2.    This complaint is submitted in parallel and supplement to a lawsuit pending in this Court, *Thomas Schemkes v. Menlo Park City School District*, No. 3:25-cv-03296-LB (the "Original Lawsuit").

3. Schemkes would prefer to file his Title VII claim through an amendment to his operative complaint in the Original Lawsuit. But the deadline for filing such a claim is nearing an end and the Court in the Original Lawsuit is presently engaged in motion-to-dismiss deliberations, which Schemkes fears would be disrupted through an amendment to the Original Lawsuit at this time. Additionally, opposing counsel will not agree to toll the Statute of Limitations until such motion has been ruled upon, nor to stipulate to filing an amended complaint in the Original Lawsuit.

4. In the interests of judicial economy, however, Schemkes hopes this complaint can ultimately be consolidated with the Original Lawsuit in a manner that will not disrupt those proceedings. To that end, and in accordance with Civil L.R. 3-12, Schemkes will file in the Original Lawsuit an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11.

### Introduction

5. Title VII of the Civil Rights Act of 1964 prohibits employers from firing employees because of religion. 42 U.S.C. § 2000e-2; *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-75 (2015).

6. But one week after Plaintiff Thomas Schemkes started teaching 6th-grade science for the Menlo Park City School District (or "District"), the District unceremoniously, without good cause, and in bad faith fired and retaliated against Mr. Schemkes because of his actual or perceived identity as a religious believer and Christian, his actual or perceived religious and Christian association, his refusal to silence student questions about religion, and his speech on matters of public concern—including religion—inside and outside of the classroom.

7. The District told Mr. Schemkes he was "not a good fit" and terminated him after he allowed a student-initiated discussion of the Bible in class, after sharing with a school official at a staff gathering his interest in Jesus Christ and Catholic identity, and after that same official's command to him thereafter "not to talk about God or quote from the Bible in your class."

8.   Because of the District's unlawful conduct, Mr. Schemkes suffered a loss of employment, lost wages, and emotional distress.

9.   The Original Lawsuit and this action follow, from which Mr. Schemkes seeks compensatory damages as well as statutory penalties, reinstatement, a public apology, and policy changes that, among other things, make the District's classrooms more inclusive.

10.  Mr. Schemkes also seeks costs and an amount in reasonable attorneys' fees, as well as interest on any and all monetary awards.

### Parties

11.  Plaintiff Thomas Schemkes is and at all relevant times has been a resident of Santa Clara County in the State of California.

12.  Defendant Menlo Park City School District is a political subdivision of the State of California. It maintains its administrative offices at 181 Encinal Avenue, Atherton, CA 94027, in the County of San Mateo. The District operates Hillview Middle School in Menlo Park, CA, in the County of San Mateo. The District employs more than five persons.

### Jurisdiction

13.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction).

### Venue

14.  Venue is proper in this district under 28 U.S.C. § 1391(b) because the District is located in this district and all events giving rise to this action took place therein.

### Divisional Assignment

15.  Pursuant to Local Civil Rule 3-5(b), Mr. Schemkes submits that this case should be assigned to the San Francisco Division because a substantial majority of the events giving rise to this case took place in San Mateo County. Local Civ. R. 3-2(d).

### Administrative Exhaustion

16.  Mr. Schemkes has met the jurisdictional prerequisites and timing requirements, as he filed a complaint by intake form with the California Civil Rights Department ("CRD") on

March 15, 2023—i.e., within 300 days of the unlawful action—that was thereafter converted by the CRD to a verified complaint on July 23, 2023; and he received a "right-to-sue" letter from the United States Equal Employment Opportunity Commission ("EEOC") on June 25, 2025. *See* 42 U.S.C. §§ 2000e-5(e)(1) (reciting 300-day deadline from unlawful action for filing administrative complaint) & 2000e-5(f)(1) (reciting 90-day deadline from "right to sue" for filing suit); Cal. Gov. Code § 12960(b) ("[F]iling a complaint [with the CRD] means filing an intake form with the department and the operative date of the verified complaint relates back to the filing of the intake form."); *Dornell v. City of San Mateo*, 19 F.Supp.3d 900, 905-06 (N.D. Cal. 2013) (explaining 300-day deadline in context of work-sharing agreement between EEOC and the California Department of Fair Employment and Housing—since renamed the CRD— and that filing with one agency counts as being constructively filed with the other).

17.  Mr. Schemkes has thus fully exhausted his administrative remedies and is entitled to file this Complaint in this court. 42 U.S.C. § 2000e-5(f).

### Statement of Facts[1]

18.  Mr. Schemkes has been a public-school teacher for more than twenty years.

19.  Mr. Schemkes is also a member of the Catholic Church.

20.  Mr. Schemkes was formerly employed as a 6th-grade science teacher at Hillview Middle School in the Menlo Park City School District.

21.  The District hired Mr. Schemkes, effective August 8, 2022.

22.  The week beginning August 21, 2022, Hillview Middle School started the school year.

23.  A curriculum was not yet available for the science teachers in the first week of classes, so the department head instructed them to conduct "Get to know you" exercises with their students until the curriculum was finalized.

---

[1] With limited exception and to avoid confusion between this complaint and the Original Lawsuit, the paragraphs from the Original Lawsuit's Statement of Facts relevant to the Title VII claim remain largely unchanged.

24.   The only planned activity that week was a lab assignment the department head organized, which Mr. Schemkes had his students complete alongside another class.

25.   Aside from the lab assignment, there were no other requirements or guidelines for the science teachers to follow besides coming up with activities to fill the time until they received the curriculum.

26.   While another science teacher had his students do an art project, Mr. Schemkes decided to have a class discussion of Charles Darwin's theory of evolution and the origin of human life.

27.   After lecturing on the science behind the theory of evolution, Mr. Schemkes asked his students if they had heard other theories about the origin of life.

28.   One student suggested aliens mated with monkeys. Another suggested humans came from Adam and Eve, to which Mr. Schemkes acknowledged that some people believe in God and that he created humans. Mr. Schemkes then moved on with his lesson plan.

29.   That night at a staff gathering, Interim Principal Danielle O'Brien asked Mr. Schemkes about his personal interests. He told her about a screenplay he was writing about the history of the first century and the life of Jesus. Schemkes also shared his Catholic background and identity.

30.   The next day, Interim Principal O'Brien asked Mr. Schemkes if he had been teaching about the Bible in his class. Mr. Schemkes responded that he led a discussion on the origin of life when a student brought up the topic of Adam and Eve to which he acknowledged that some people believe in that creation story.

31.   Interim Principal O'Brien seemed satisfied with his explanation but warned Mr. Schemkes he might get questions about the class discussion at a parent-night gathering that evening.

32.   At parent night, some parents asked Mr. Schemkes about the class discussion. Mr. Schemkes explained he was merely posing an open question to the students, and that he did not affirm the truth of the one student's mention of humans coming from Adam and Eve. Rather, he

only acknowledged the existence of that belief. The parents seemed satisfied with his explanation.

33.   The following morning, Interim Principal O'Brien sent Mr. Schemkes an email saying, "You will not talk about God or quote from the Bible in your class, you will follow our curriculum."

34.   Later in the day, Interim Principal O'Brien sat in on Mr. Schemkes' class when he had his students do an exercise about writing science fiction. Interim Principal O'Brien shared with Mr. Schemkes that she loved the idea of that activity.

35.   At the end of the day, however, Assistant Superintendent Kristen Gracia and another employee of the District came to Mr. Schemkes' classroom. The District officials handed Mr. Schemkes a copy of his appointment letter and told him he was a temporary employee subject to termination at any time "at the pleasure of the Board."

36.   Assistant Superintendent Gracia then handed Mr. Schemkes a paper signed by Superintendent Erik Burmeister stating that Mr. Schemkes was being fired effective immediately and demanded that he sign it. In handing him the termination, Assistant Superintendent Gracia told Mr. Schemkes, "You are just not a good fit."

37.   Mr. Schemkes requested to speak with his union representative before he signed anything he did not understand.

38.   Assistant Superintendent Gracia then had Mr. Schemkes escorted out of the school.

39.   On March 15, 2023, Mr. Schemkes filed a complaint by intake form with the California Civil Rights Department. The CRD issued Mr. Schemkes a verified complaint on July 23, 2023, and then a right-to-sue on May 29, 2024.

40.   The Equal Employment Opportunity Commission issued Mr. Schemkes a right-to-sue on June 25, 2025.

41.  As a result of his abrupt, discriminatory, and retaliatory firing, Mr. Schemkes suffered mental distress and a financial crisis, as he supports three daughters in school and lacked health insurance to pay for his daughters' care.

42.  Mr. Schemkes remains interested in and seeks reemployment with the District, subject to the remedies he seeks herein and at an appropriate rank and pay.

**First Cause of Action**
**Religious Discrimination in Employment**
**in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

43.  Mr. Schemkes realleges and incorporates by reference all paragraphs of this Complaint.

44.  Title VII forbids an employer from discriminating against an employee on the basis of his actual or perceived religion, or his actual or perceived association with religion. 42 U.S.C. § 2000e-2; *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) (stressing that Title VII's intentional discrimination prohibition concerns the employer's motives).

45.  Here there is direct evidence of discrimination based on Interim Principal O'Brien's words and actions alleged above.

46.  A disparate treatment theory of discrimination can also be shown by the three-stage burden-shifting test in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

47.  Under the *McDonnell Douglas* test, a plaintiff can make out a prima facie case of unlawful employment discrimination by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].'" *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)). Notably, the plaintiff's burden here is "not onerous." *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

48.  Accordingly, a plaintiff can establish a prima facie case of discrimination in violation of Title VII where he can show (1) he belonged to a protected class, (2) he was qualified for the position he held and was performing that job competently, (3) he suffered an adverse

employment action, and (4) other surrounding circumstances that give rise to an inference of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

49.  Here, Mr. Schemkes is a member of the Catholic Church, and after Interim Principal O'Brien became aware of the class discussion in which a student mentioned Adam and Eve and later learned about Mr. Schemkes' writings on Jesus as well as his Catholic background and identity, he was both known or perceived among relevant school officials to be religious and Christian, as well as known or perceived to be associated with religion and Christianity.

50.  After learning about Mr. Schemkes' Christian affiliation, Interim Principal O'Brien reprimanded him in an email, instructing him not to talk about God or quote from the Bible and to follow the school's (as yet nonexistent) curriculum—and this was even after their conversation in which Mr. Schemkes had disabused Interim Principal O'Brien of the misguided perception he was teaching about Creationism.

51.  Almost immediately following Interim Principal O'Brien's reprimand, Mr. Schemkes was then subject to adverse action in the form of termination of his employment without any explanation other than Assistant Superintendent Gracia telling Mr. Schemkes that he was "just not a good fit"—a revelation that, again, the District indicated only after learning of Mr. Schemkes' actual or perceived Christian identity and association.

52.  In any event, there is no evidence that Mr. Schemkes was teaching about religion or Creationism or that he was non-compliant with a school curriculum. In fact, the opposite is true.

53.  Though there was no curriculum ready, Mr. Schemkes had his class complete the only activity the department head had planned for that week. And in his science class, he was teaching about Darwin's theory of evolution and the origin of life—a topic frequently covered in science curricula. What's more, it was a student who brought up the topic of Adam and Eve to which Mr. Schemkes merely responded. Accordingly, any arguments Mr. Schemkes' firing was based on his non-compliance with the curriculum or his teaching religion in the classroom are pretextual.

54.  Rather, it was not until school officials learned of Mr. Schemkes' Christian affiliation and believed he might push Creationism in the classroom that they decided to get rid of him.

55.  The District violated Title VII where, among other things, it terminated Mr. Schemkes because of his actual or perceived identity as a religious believer and Christian; his actual or perceived religious and Christian association; his refusal to silence questions from his students about religion and the Bible, as well as on the false, inadequately investigated, and take-it-or-leave-it premise that he was teaching about religion or Creationism or that he was non-compliant with a school curriculum; and his exercise of free speech.

56.  The District's mistreatment violated Title VII and caused Mr. Schemkes emotional and financial hardship in the form of mental distress, loss of income, and loss of medical insurance at a time he and his daughters needed it—all of which he seeks to recover for through a damage award and all other applicable legal remedies.

57.  In further remedy, Mr. Schemkes also seeks backpay, reinstatement, and other forms of equitable relief—including a public apology and a policy change that prevents similar mistreatment in the future.

58.  As a prevailing party, Mr. Schemkes is also entitled to recover, and seeks, reasonable attorneys' fees and costs. 42 U.S.C. § 2000e-5(k).

### Prayer for Relief

59.  WHEREFORE, Mr. Schemkes incorporates by reference all allegations contained in the preceding paragraphs of this Complaint as though fully stated here, and prays that the Court grant the following relief from the District:

(a) Issue a declaratory judgment that the District's practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act of 1964.

(d) Award Mr. Schemkes all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial to make him whole for the loss he suffered as a result of the unlawful conduct alleged in this Complaint;

(e)  Award all appropriate and legally available compensatory damages to Mr. Schemkes to fully compensate him for the pain, suffering, and other expenses caused by the harmful conduct alleged in this Complaint;

(g)  Award Mr. Schemkes interest at the legal rate on damages and any other monetary relief as appropriate, including pre- and post-judgment interest;

(h)  Order the District and its agents to reinstate Mr. Schemkes, at an appropriate rank and pay and give him credit for years of service he would have served but for the discrimination;

(i) Order the District to adopt a policy that makes clear a commitment to inclusive hiring and discussion in the classroom when it comes to religion, in accordance with applicable law;

(j)  Award Mr. Schemkes an amount of reasonable attorney's fees and costs for the work of his attorneys in pursuit of this action and the protection of his rights pursuant to applicable law—including, but not limited to 42 U.S.C. § 2000e-5(k).

(k)  Award Mr. Schemkes all costs, disbursements, and expenses he paid or that were incurred on his behalf;

(l) Order Interim Principal O'Brien, Assistant Superintendent Gracia, and all other individuals involved in Plaintiff's termination to receive training on religious discrimination.

(m) Award such additional relief the Court deems just and proper, as well as any other relief as allowed by law or in equity.


//

//

//

**Demand for Jury Trial**

Mr. Schemkes hereby demands a trial by jury of all issues and each and every cause of action so triable pursuant to Title VII of the Civil Rights Act of 1964.

Dated:  September 22, 2025
Westlake Village, CA

*s/ Jonathon Cherne*

By: _____
Alan J. Reinach
Jonathon Cherne
CHURCH STATE COUNCIL

James A. Sonne
STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC

Attorneys for Plaintiff Thomas Schemkes